IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROSEMARY LOUISE LEE, | ) | CASE NO. 4:13-cv-01579 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |
| Defendant. | ) | |

Plaintiff Rosemary Louise Lee ("Plaintiff" or "Lee") seeks judicial review of the final

decision of Defendant Commissioner of Social Security ("Defendant" or "Commissioner")

denying her applications for social security disability benefits.  Doc. 1.  This Court has

jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned Magistrate

Judge pursuant to the consent of the parties. Doc. 14.   For the reasons set forth herein, the Court

**AFFIRMS** the Commissioner's decision.

## I.  Procedural History

In February 2010, Lee filed applications for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI") alleging a disability onset date of July 11, 2009.[1]  Tr. 11,

64-67, 111-117, 120-125, 140, 174.  Lee alleged disability based on depression, severe back

pain, carpal tunnel syndrome, pain in both feet, and numbness on left side.  Tr. 68, 72, 78, 81,

---

[1] The ALJ concluded that the alleged onset date was July 11, 2009.  Tr. 11.  Lee last worked on July 11, 2009.  Tr. 119, 174.  Lee does not assert error with respect to the ALJ's finding with respect to the alleged onset date. However, the Court notes that Lee's applications reflect an alleged onset of June 1, 2009. Tr. 111, 120.

144.  After initial denial by the state agency in August 2010 (Tr. 64, 65, 68-71, 72-74),[2] and

denial upon reconsideration in March 2011 (Tr. 66, 67, 78-80, 81-83), Lee requested a hearing

(Tr. 84-86).  On May 4, 2012, Administrative Law Judge Charles Shinn ("ALJ") conducted an

administrative hearing.  Tr. 32-63.

      In his May 30, 2012, decision, the ALJ determined that Lee had not been under a

disability from July 11, 2009, through the date of the decision.  Tr. 8-29.  Lee requested review of

the ALJ's decision by the Appeals Council.  Tr. 5-7.   On May 29, 2013, the Appeals Council

denied Lee's request for review, making the ALJ's decision the final decision of the

Commissioner.  Tr. 1-4.

## II. Evidence

### A.  Personal, educational and vocational evidence

      Lee was born in 1974 and was 38 years old at the time of the administrative hearing.  Tr.

38, 111, 120, 140.  She completed 11th grade and obtained a GED.  Tr. 38, 145.  She has two

sons.  Tr. 47, 204.  At the time of the hearing, she was living in a two-story house with her 19

year old son who was finishing high school.  Tr. 39-40.  From approximately 2000 through 2009,

Lee worked as a nurse's aide in hospitals, nursing homes, and home care environments.  Tr. 37,

40, 51, 146.  She last worked on July 11, 2009.  Tr. 119, 174.

---

[2] Prior to the August 2010 denial, there had been an allowance of disability based on a finding that Lee met Listing
1.02A.  Tr. 181.  However, a review of that finding was conducted and corrective action was taken to amend the
determination from an allowance to a denial based on the finding that Lee could perform other work.  Tr. 64, 65,
181-184.  During a telephone conference with the Social Security Administration's District Office, Lee asked about
the allowance and subsequent denial and was informed that claims are randomly reviewed throughout the country
"to insure everyone is following the same process."  Tr. 191.

**B.**     **Medical evidence**[3]

On July 13, 2009, Lee saw Vikram Arora, M.D., of the Family Practice Center with complaints of left-sided weakness.  Tr. 236-238.   Lee reported two episodes of falling and that her leg gave out while walking down steps.  Tr. 236.  She also reported having headaches twice daily.  Tr. 236.   On examination, Lee showed reduced strength (3/5) in her left upper and lower extremities.  Tr. 237.  Dr Arora recommended an MRI of Lee's brain and spine and that Lee get a cane for walking support and as a precaution against falls.  Tr. 238.   At a follow-up visit on July 31, 2009, with Thomas J. Klosterman, M.D., of the Family Practice Center for Lee's depression and left-sided weakness, Lee requested completion of disability paperwork for a medical leave of absence indicating that her depression and left-sided weakness put her at risk working as a health aide. Tr.  240-241.  She had not yet obtained the recommended MRI.  Tr. 240.  Dr. Klosterman told Lee that her symptoms are not serious enough to qualify for disability from a medical standpoint and that working would help with her depression by staying connected with others.  Tr. 241.  Dr. Klosterman also noted that Lee had come to the office without a cane and was walking fine.  Tr. 241.  Dr. Klosterman indicated that Lee would be referred to physical therapy for a functional evaluation.  Tr. 241.

On August 5, 2009, Lee had a cervical and lumbar MRI.  Tr. 242.  On August 20, 2009, Lee saw Dr. Kolsterman (Tr. 243-244) and he indicated Lee's MRI was essentially negative with

---

[3] Lee does not provide a summary of the relevant facts in her briefs.  She raises an argument regarding the vocational expert's testimony and her other arguments relate primarily to her physical rather than her mental impairments and/or are focused on the ALJ's consideration of the opinions of two physicians: Dr. Ruperl Patel, M.D., a treating physician with the Family Practice Center, and Dr. Leslie Green, M.D., a state agency reviewing physician.  Thus, the medical evidence section is focused on the evidence generally relating to those issues, with additional discussion of the relevant medical evidence contained in the Law and Analysis section.

the exception of mild disc bulges at the cervical and lumbar areas (Tr. 243).[4]  On examination, Lee showed mild generalized weakness in her lower left extremity and normal range of motion and strength in her right lower extremity.  Tr. 244.

During a September 15, 2009, functional capacity evaluation (Tr. 246-256), Lee had a slow gait and decreased stride (Tr. 249).  Lee was ambulating with a straight cane in her left hand.  Tr. 247.  It was noted that she was using the cane inappropriately; she was holding it on the incorrect side.  Tr. 247.  She was instructed on the proper use of the cane.  Tr. 249.  Lee was unable to complete the full functional capacity evaluation because she was unable to walk 2 mph on the treadmill and therefore could not complete the cardiovascular portion of the test.  Tr. 248. In summary, Lee demonstrated a walking tolerance of three minutes on a level surface.  Tr. 250. She could lift 20 pounds occasionally and 10 pounds frequently except her overhead lifting was limited to 10 pounds occasionally.  Tr. 250.  An EMG was recommended along with physical therapy and occupational sessions were recommended for Lee to work on goals and return to work and activities of daily living. Tr. 250, 256.

On September 17, 2009, Dr. Ruperl Patel, M.D., completed a physician's statement for Lee in support of a disability claim with Unum Insurance Company.  Tr. 262-268.  Dr. Patel indicated that Lee's primary diagnoses were left-sided weakness and instability and depression. Tr. 262.  In a check-box format, Dr. Patel offered his opinion regarding Lee's physical capabilities.  Tr. 263.  He opined that Lee could sit for 3 hours, stand for 1 hour, and walk for 1

---

[4] Lee later had other objective medical tests, including December 2010 MRIs of her feet which showed mild plantar fasciitis changes (Tr. 420-421); a May 2011 x-ray of her cervical spine which was negative (Tr. 449); a July 2011 MRI of her cervical spine which showed shallow disc protrusion at C5-C6 with thecal sac effacement but no foraminal compromise, and low-grade vertebral body and facet arthropathy with stenosis at C3-C4, C4-C5, and C6-C7 (Tr. 451); and  a July 2011 EMG study which showed no evidence of neuropathy, myopathy, or efferent cervical radiculopathy (Tr. 447-448).

hour.  Tr. 263.  He opined that Lee could never climb,[5] twist/bend/stoop, or operate heavy

machinery.  Tr. 263.  He opined that Lee could occasionally reach above shoulder level.  Tr. 263.

He opined that Lee could not lift any weight.  Tr. 263.  Also, Dr. Patel opined that Lee could

never perform fine finger movements or push/pull with her left side; she could occasionally

perform fine finger movements and push/pull with her right side; and she could occasionally

perform hand/eye coordinated movements.  Tr. 263.

In February 2010, Lee started treatment with various podiatrists under the supervision of

Dr. Vern Chuba, DPM, for complaints regarding her bilateral heel pain.  Tr. 422-436.  On May

12, 2010, she was assessed with radiculopathy; tarsal tunnel, left; plantar fasciitis, left, with

medial calcaneal nerve entrapment, left.  Tr. 427.  On January 5, 2011, Lee made the decision to

proceed with surgery for her plantar fasciitis.  Tr. 433.  On February 21, 2011, one of Lee's

podiatrists, Darleen Abadco, DPM, completed a questionnaire wherein she reported that Lee

would have pain in her left foot with lengthy periods of time of weight bearing on her left foot

but she should be able to work in a sitting position or with restricted weight bearing and

restricted ambulation.  Tr. 416-418.

Lee continued to receive treatment from various physicians at the Family Practice Center

from September 2009 through at least May 2012.  Tr. 274-288, 293-301, 309-317, 353-362, 373-

377, 396, 516-572, 664.  On August 4, 2010, upon the request of Dr. Lisa Weiss, M.D., of the

Family Practice Center, Lee was seen by neurologist Amarjeet S. Nagpaul, M.D., for left-sided

numbness and headaches.  Tr. 365-367.  Dr. Nagpaul recommended that the focus of Lee's

treatment should be on her depression.  Tr. 367.  In September 2011, Lee indicated she was

trying to increase her exercise; she reported she could not run but was trying to walk briskly.  Tr.

535.  Physical examinations in July, September and October 2011 showed that Lee had

---

[5] Dr. Patel also checked a box indicating that Lee could occasionally climb.  Tr. 263.

normal/full range of motion in all joints.  Tr. 529, 538, 543.  On May 17, 2012, Dr. Rajiv Tejura, M.D., of the Family Practice Center approved Lee's use of a 4-pronged cane for balance/obesity. Tr. 664.

On October 21, 2011, upon request of the Family Practice Center, Lee was seen by Joseph A. Cerimele, D.O., of the Ohio Sports and Spine Institute for consultation.  Tr. 463-464. Dr. Cerimele's notes indicate that Lee complained of pain with all movement but she had no dysfunction in walking.  Tr. 463.   Following his evaluation, his impression was functional cervicothoracic pain.  Tr. 464.  His recommendation was that Lee start an active rehabilitation program for stabilization, strength and endurance.  Tr. 464.   Dr. Cerimele continued to treat Lee for follow up.  Tr. 459-462.  On November 15, 2011, Dr. Cerimele conducted a physical capacity evaluation noting that Lee's performance was sedentary or consistent with the lifestyle she reported.  Tr. 462.

During various periods in 2010, 2011, and 2012, Lee underwent physical therapy for cervicothoracic dysfunction, weakness, and pain, which included the rehabilitation program that Dr. Cerimele recommended.  Tr. 306-307, 472-513.  In November 2010, one of Lee's physical therapists completed an evaluation form indicating that Lee had a slow gait but she could walk noting that, while she complained that it was difficult, Lee walked uphill 300 feet or more on each visit.  Tr. 388.  No ambulatory aid was being used.  Tr. 388.  The therapist also noted that Lee could use her extremities for functional tasks although her speed and strength of movement were slow and she had mild/moderate range of motion limitations.  Tr. 388.

## C.    Testimonial evidence

### 1.      Plaintiff's testimony

Lee appeared with counsel and testified at the administrative hearing.  Tr. 38-54, 61.  She discussed both her physical and mental impairments for which she takes a number of different medications, including Prozac, Abilify, Topamax, Vesicare, Ibuprofen, Neurontin, Naprosyn, and Singular, and she uses an inhaler with an Advair disc.  Tr. 40-41.  She testified that she was 4'11'' tall and weighed 312 pounds.  Tr. 39.   Lee indicated that her physical impairments were worse than her mental impairments.  Tr. 43.

On and off throughout the day, Lee's whole left side goes numb and she frequently falls. Tr. 41-42.  She has been informed that her left-sided numbness is caused by nerve damage and obesity.  Tr. 42.  Lee's family doctor, Dr. Patel, prescribed a cane in 2009 because of her left-sided numbness and frequent falls.  Tr. 41-42.  She had last fallen about 6 days before the hearing.  Tr. 53-54.  She was just walking in her hallway at home and fell.  Tr. 54.  She uses her cane when she is out as well as when she is in her house.  Tr. 42.  She indicated that her doctors were considering a prescription for a quad cane because she was still having frequent falls with her straight cane and her doctors were thinking that a quad cane would help her with her balance. Tr. 53.  Lee also has fasciitis in both feet.  Tr. 43.  She has had surgery on her left foot.  Tr. 43. She has no feeling in her heels and ankles and the bottoms of her feet constantly burn and ache. Tr. 44.  Other than medication for the pain in her feet, Lee's doctors have suggested applying ice and she has splints for her legs for nighttime.  Tr. 44, 45.

She also has carpal tunnel and has had surgery on both hands; one surgery was performed about 10 years ago and the other one about 3 years ago.  Tr. 43.  She indicated that the surgeries were not helpful.  Tr. 43.  Her carpal tunnel limits her ability to hold things.  Tr. 44.  Her fingers tingle, go numb, and throb.  Tr. 44.   Other than medication for the pain in her hands, Lee has tried therapy but it was not working and she has splints.  Tr. 44.

7

She also has pain in her back, knees, neck and left shoulder.  Tr. 45.  Because of her pain, she has a difficult time sleeping.  Tr. 45.  She usually sleeps for only 2 hours at night.  Tr. 45.  She is constantly moving because of her pain and it is hard for her to get in the right position.  Tr. 45.  For example, she stated during the hearing that she was having a difficult time and was constantly moving around.  Tr. 45.  With respect to her shoulder, she has not had surgery but she has had injections in the past.  Tr. 45.  Her knees are swollen and ache.  Tr. 45.  When she walks or tries to go up steps, it feels like her knees are shifting or buckling.  Tr. 45.  Lee described the pain in her neck as dull and achy, with a burning sensation on occasion.  Tr. 46.  Her doctors have not suggested surgery for her neck but she has tried water therapy.  Tr. 46.  Lee gets some relief when she is in the pool but, as soon as she is out of the pool, her symptoms return.  Tr. 46.

Lee has suffered from depression for about 3 years and had been treating with Dr. Hammond with Family Practice but had recently started counseling at Turning Point.  Tr. 41, 46-47.  At the time of the hearing, she had been to Turning Point four times.[6]  Tr. 61.  She always feels down, gets real emotional, has crying spells, and isolates herself from others.  Tr. 47, 48.  She does not leave her house unless she has to go somewhere like a doctor's appointment or the store.  Tr. 49.  Lee's mother lives about 10 minutes from Lee but she is disabled.  Tr. 47.  Lee stated that, before she became sick, she was taking care of her mother because Lee is an only child.  Tr. 47-48.  Now, she does not see her mother very often but talks with her on the phone a lot.  Tr. 48.  Lee does not have friends.  Tr. 48.

With respect to daily activities, Lee drives about twice a week.  Tr. 48.  Her son helps her with grocery shopping.  Tr. 48.  One time she was trying to cook and the pot fell out of her hand and scalded and burned her left leg.  Tr. 48.  She indicated that dropping things is not unusual;

---

[6] At the close of the hearing, the ALJ informed Lee's counsel that he would like to see the Turning Point records and indicated that he would leave the record open for 2 weeks so that the records could be obtained.  Tr. 61-62.

she drops things several times during a week.  Tr. 50.  Therefore, her son usually helps with the cooking as well as other household chores.  Tr. 48.   During the day, Lee usually watches television or reads but she has a difficult time concentrating because her mind drifts.  Tr. 49.

When working as a nurse's aide, she was dropping things, which Lee stated was one of the reasons why she was let go from her last employment.  Tr. 50.  For example, when feeding a client, she spilt food on them; when doing laundry for clients, she dropped their laundry; and once, she almost dropped a client.  Tr. 51.  Lee indicated that she loved her job but she was constantly on her feet, moving around, lifting, picking up, bending, transporting, and carrying people.  Tr. 51-52.  For example, she transported clients from their wheelchairs to their beds and to the bathroom.  Tr. 52.  She indicated that she would no longer be able to perform her job as a nurse's aide in any setting with her limitations.  Tr. 52-53.  Lee stated it was hard for her to lift, bend, and carry and stand up on her own without falling on herself.  Tr. 52-53.  She reported having gained 75 pounds since she last worked, which was in 2009.  Tr. 51, 52-53.

### 2.      Vocational expert's testimony

Vocational expert James W. Primm ("VE") testified at the hearing.  Tr. 54-60,107-110. The ALJ indicated that, although Lee had worked in the past, the ALJ was going to make a finding that Lee was unable to return to her past work.  Tr. 55.  The ALJ then proceeded to ask the VE a series of hypothetical questions based on a younger individual with a high school education in the form of a GED and with the same past work experience as Lee.  Tr. 55-56.

In his first hypothetical, the ALJ asked the VE to assume that the hypothetical individual had the following limitations: she can lift, carry, push and pull 10 pounds occasionally and 5 pounds frequently; can sit for 6 hours and stand and/or walk for 2 hours in a normal workday; cannot climb ladders, ropes or scaffolds and can occasionally climb ramps and stairs; can

occasionally balance, stoop, kneel, crouch and crawl; cannot use foot controls bilaterally; must avoid exposure to workplace hazards such as unprotected heights or dangerous moving machinery; must avoid concentrated exposure to dust, fumes, gases, odors, and poorly ventilated areas; is limited to simple, routine tasks that do not involve arbitration, negotiation or confrontation; cannot direct the work of others or be responsible for the safety or welfare of others; cannot perform work that requires strict production quotas; cannot perform assembly line work or piece rate work; and is limited to superficial interaction with others. Tr. 56. The VE indicated that there were 2 sedentary, unskilled jobs in the regional or national economy that the hypothetical individual could perform: (1) pari-mutuel ticket checker with 1.6 million positions available nationwide and 61,000 statewide; and (2) surveillance monitor with 79,000 positions available nationwide and 2,400 statewide. Tr. 57. The VE indicated that there were other sedentary, unskilled positions, but the limitation that the individual have only superficial contact with others eliminated the majority of those other positions. Tr. 57.

In his second hypothetical, the ALJ asked the VE to assume the individual described in the first hypothetical but to add that the individual can only occasionally handle, finger and feel bilaterally. Tr. 57-58. With that limitation, the VE indicated that the pari-mutuel ticket checker position would not be available. Tr. 58, 59-60. However, the VE stated that the surveillance monitor position would remain available. Tr. 58.

In his third hypothetical, the ALJ asked the VE to assume the individual described in the first hypothetical but to add that the individual would miss at least 3 days of work per month secondary to medical and emotional issues. Tr. 58. The VE indicated that there would be no positions available to that individual. Tr. 58, 60. Also, the VE indicated that, if the individual

was at work but off task 25% of the time, there would be no jobs available for that individual. Tr. 58, 60.

## III. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

 In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations.  The five steps can be summarized as follows:

1.   If the claimant is doing substantial gainful activity, he is not disabled.

2.   If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.   If the claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment,[7] the claimant is presumed disabled without further

---

[7] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.  20 C.F.R. § 416.925.

inquiry.

4.  If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if the claimant's impairment prevents him from doing past relevant work.  If the claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.  If the claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  Under this sequential analysis, the claimant has the burden of proof at Steps One through Four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC and vocational factors to perform work available in the national economy.  *Id.*

### IV. The ALJ's Decision

In his May 30, 2012, decision, the ALJ made the following findings:[8]

1.  Lee met the insured status requirements through December 31, 2014. Tr. 13.

2.  Lee had not engaged in substantial gainful activity since July 11, 2009, the alleged onset date.  Tr. 13.

3.  Lee had the following severe impairments: obesity, degenerative disc disease, plantar fasciitis, asthma, and depression.  Tr. 13-14.  Her migraines, osteoarthritis, carpal tunnel syndrome, and left shoulder pain were non-severe impairments.  Tr. 14.

4.  Lee did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments, including Listing 1.02.  Tr. 14-15.

5.  Lee had the RFC to perform sedentary work except she could lift, carry, push, and pull ten pounds occasionally and five pounds frequently; could

---

[8] The ALJ's findings are summarized herein.

sit for six out of eight hours and stand/walk for two out of eight hours; could not climb ladders, ropes, or scaffolds, but could occasionally climb ramps and stairs; could occasionally balance, stoop, kneel, crouch, and crawl; could not use foot controls; must avoid concentrated exposure to dusts, fumes, gases, odors, and poorly ventilated areas; must avoid workplace hazards such as unprotected heights or dangerous moving machinery; is limited to simple, routine tasks that do not involve arbitration, negotiation, confrontation, directing the work of others, or being responsible for the safety or welfare of others; could not perform work requiring strict production quotas; could not perform piece rate work or assembly line work; and is limited to only superficial interaction with others.  Tr. 15-22.

6.  Lee was unable to perform any past relevant work.  Tr. 22.

7.  Lee was born in 1974, and was 35 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.  Tr. 22.

8.  Lee had at least a high school education and was able to communicate in English.  Tr. 22.

9.  Transferability of job skills was not material to the determination of disability.  Tr. 22.

10.  Considering Lee's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Lee could perform, including ticket checker and surveillance system monitor. Tr. 22-23.

Based on the foregoing, the ALJ determined that Lee had not been under a disability from

Jul 11, 2009, through the date of the decision.  Tr. 23-24.

## V. Parties' Arguments

### A.    Plaintiff's arguments

In her opening brief, Lee appears to present two arguments for this Court's review: (1) an

argument that the ALJ erred in failing to find that she met or equaled Listing 1.02A (Doc. 15, p.

7); and (2) an argument challenging the ALJ's finding that Lee could perform sedentary work

and the ALJ's failure to rely on alternate VE hypotheticals.  Doc. 15, pp. 2, 7-9.  However, in her

reply brief, Lee claims that the ultimate issue presented in her opening brief was a treating

physician argument regarding the ALJ's consideration of Dr. Patel's opinion and an argument that the ALJ did not properly weigh state agency reviewing physician Dr. Green's opinion.  Doc. 17, pp. 1-4.  Although not fully developed and not contained in the "Argument" section of her opening brief, there are brief references to the ALJ's consideration of the opinions of Dr. Patel and Dr. Green.  Doc. 15, pp. 5-6.  Thus, the Court will address Lee's treating physician argument and her claim that the ALJ did not properly consider Dr. Green's opinion.

**B.      Defendant's arguments**

The Commissioner also argues that, other than a mention of Dr. Green's finding that Lee met Listing 1.02A, Lee cites no facts to demonstrate that she met Listing 1.02A and, therefore, she has failed to meet her burden of proof at Step Three.  Doc. 16, pp. 13-14.  Further, the Commissioner argues that substantial evidence supports the ALJ's finding that Lee does not meet a Listing and Dr. Green's finding is contradicted by the record evidence. Doc. 16, pp. 13-15.

The Commissioner argues that the ALJ clearly considered Lee's impairments, separately and in combination, throughout the sequential evaluation process and the ALJ's Step Three and RFC findings are supported by substantial evidence.  Doc. 16, pp. 15-16.  Further, the Commissioner argues that the ALJ relied upon the VE's response to a hypothetical that accurately reflected the RFC determination.  Doc. 16, p. 16.  Thus, there was no error at Step Five. Doc. 16, p. 16.

## VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321

F.3d 611, 614 (6th Cir. 2003).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).   The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).

Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).  Accordingly, a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

**A.    The ALJ's finding that Lee did not meet Listing 1.02A is supported by substantial evidence**

On May 5, 2010, state agency reviewing physician[9] Dr. Leslie Green, M.D., reviewed Lee's records and concluded "Clmt equals the intent of listing 1.02A"[10] indicating that Lee "is

---

[9] As a reviewing physician, Dr. Green did not examine Lee.

[10] Listing 1.02(A) addresses Major dysfunction of a joint(s) (due to any causes), which is:

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> > A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subpt. P, App. 1, Listing §1.02A.

morbidly obese with a BMI of 62.8 . . . [which] would not allow effective ambulation." Tr. 318. She stated further that Lee "also uses a cane to avoid falling." Tr. 318. Lee argues that, because Dr. Green concluded that Lee met or equaled Listing 1.02A, the ALJ erred by not finding Lee disabled. Doc. 15, p. 7 (referencing Tr. 318).

However, on August 2, 2010, an internal agency quality assurance record review resulted in an amended determination and denial based on the conclusion that, contrary to Dr. Green's impairment severity decision, the medical evidence supported a finding that Lee could perform other work and Lee's claim should have been denied. ("Request for Corrective Action"). Tr. 181-184, 187. For example, as reflected in the Request for Corrective Action, on a report from August 6, 2009, Lee was noted to be walking fine during an examination. Tr. 182, 241. A report from August 24, 2009, noted that Lee had normal range of motion and strength in the right lower extremity and mild generalized weakness in the left lower extremity. Tr. 182, 244. On September 15, 2009, Lee was ambulating slowly with a decreased stride, with a note, however, that Lee had been using her cane incorrectly. Tr. 182, 249. On March 5, 2010, Lee had complained of peripheral neuropathy and weakness on the left side. Tr. 183, 293. However, her condition had been improving and she had been walking to her appointments with no problem and had been witnessed walking around and outside the hospital campus with no apparent problems and had been found to have normal range of motion and strength in her right and left upper and lower extremities. Tr. 183, 293-294.

"[I]t is the claimant's burden to show that he meets or medically equals an impairment in the Listings." *Todd v. Astrue*, 2012 WL 2576435, * 9 (N.D. Ohio 2012) (internal citations omitted), *report and recommendation adopted*, 2012 WL 2576282 (N.D. Ohio 2012). Here, other than arguing that the ALJ should have relied upon Dr. Green's opinion which, as discussed

above, was determined to be unsupported by the medical evidence, Lee points to no evidence to

demonstrate that she meets or medically equals Listing 1.02A.  Accordingly, Lee has failed to

meet her burden or demonstrate that reversal and remand is warranted.

Moreover, the ALJ discussed the medical evidence in detail and fully explained the basis

for his finding that, notwithstanding Dr. Green's opinion that Lee equaled Listing 1.02A, Lee did

not have an impairment or combination of impairments that met or equaled Listing 1.02A.  Tr.

14-15, 18-22.  For example, at Step Three, the ALJ stated

> No treating or examining physician has indicated findings that would satisfy the
> severity requirements of any listed impairment.  In reaching such conclusion, I
> considered the opinion of the State Agency medical consultants who evaluated
> this issue at the initial and reconsideration levels of the administrative review
> process and reached the same conclusion. I considered all relevant listings in
> reaching this finding, with specific emphasis on listings 1.02, 1.04 3.03, and
> 12.04.  I recognize that the State Agency initially found that the claimant's
> impairments met or equaled listing 1.02A, however, such determination was later
> reversed.  Moreover, as described more fully below, I do not find that the
> claimant's impairments met listing 1.02.
>
> In determining that the claimant's impairments do not rise to listing level, I
> considered the effect her obesity has on her other impairments and on her ability
> to perform routine movement and necessary physical activity within the work
> environment.  I also took into account how her obesity may cause fatigue that
> would affect her ability to function physically pursuant to Social Security Ruling
> 02-1p.  As a result of her obesity, I further reduced the residual functional
> capacity from the level contemplated by the State Agency, to accommodate the
> complications related to her obesity.  Accordingly, I do not find that the
> claimant's obesity either singularly or in combination with her other medically
> determinable severe impairments results in limitations greater than those assessed
> in this opinion.

Tr. 14 (internal citations omitted).

Thereafter, when discussing the evidence in greater detail, including treatment records

and opinion evidence, the ALJ further explained his rationale for finding that Lee's impairments

did not meet or equal Listing 1.02A stating,

[I]n May 2010, Leslie Green, M.D., a consultant with the State Agency, asserted that the claimant's impairments equaled listing 1.02A due to her problems ambulating and her obesity (B4F/1).  I give little weight to such assessment.  The Quality Assurance Unit later determined that the medical evidence did not support such conclusion (B8E).  Shortly after her initial problems, the claimant's strength and gait returned to normal with relatively conservative treatment.  Moreover, there was little objective evidence to substantiate the weakness and numbness that the claimant asserted.  Additionally, there were few signs of substantial problems with any of the claimant's weight-bearing joints.  Plantar fasciitis and obesity appeared to be the main drivers of her problems walking.  Even in considering such conditions, the claimant was still observed to walk without assistance at numerous points in the record, indicating that she was able to ambulate effectively.

Tr. 20.

The ALJ then went on to discuss that two other state agency reviewing physicians opined that Lee was capable of light exertional work with some non-exertional limitations.  Tr. 20-21 (discussing the opinions of state agency reviewing physicians Perry White, M.D.,[11] and Willa Caldwell, M.D.).[12]  The ALJ gave great weight to the opinions of Drs. White and Caldwell as being generally consistent with the evidence of record but gave Lee the benefit of the doubt and restricted Lee to a sedentary level of work.  Tr. 21.  The ALJ also gave weight to the February 21, 2011, opinion of Lee's podiatrist Darleen Abadco, DPM, who opined that, while Lee had pain in her left foot with lengthy periods of time of weight bearing on the left foot, she should be able to work in a sitting position or with restricted weight bearing and ambulation.  Tr. 21, 416-418.

---

[11] On July 13, 2010, state agency reviewing physician Dr. Perry M. White, M.D., conducted a case analysis (Tr. 325) and completed a Physical RFC Assessment (Tr. 326-333).  Dr. White concluded that the evidence of record did not support a finding that Lee met or equaled Listing 1.02A.  Tr. 325.

[12] On March 8, 2011, state agency reviewing physician Willa Caldwell, M.D., completed a Physical RFC Assessment.  Tr. 437-444.  Dr. Caldwell noted that there was a medical source statement indicating that Lee had pain in her left foot with lengthy periods of weight bearing to her left foot but should be able to work in a sitting position or with restricted weight bearing or restricted ambulation; also noting that Lee was heavy set which contributed to the pain in her feet. Tr. 444.  This appears to be a reference to the February 21, 2011, report of one of Lee's podiatrists Darleen Abadco, DPM.  Tr. 416-418, 422-436.

Lee has failed to point to evidence to demonstrate that she meets or medically equals Listing 1.02A and considering the ALJ's decision as a whole there is sufficient information and analysis to allow this Court to conduct a meaningful judicial review and to conclude that the ALJ's Step Three findings are supported by substantial evidence.  Thus, Lee's  request that this Court overturn the Commissioner's decision based on the ALJ's Step Three findings is unpersuasive and without merit.

## B.   The ALJ properly considered the medical opinion evidence and did not violate the treating physician rule

Although not clearly articulated in her opening and reply briefs, Lee appears to argue that the ALJ violated the treating physician rule with respect to the September 2009 opinion rendered by her treating physician Dr. Ruperl Patel, M.D., because the ALJ failed to provide "any explanation or reasoning" for rejecting Dr. Patel's opinion.  Doc. 15, p. 6; Doc. 17, pp. 1-2.  Lee also argues that the ALJ failed to provide "any explanation or reasoning" for rejecting state agency reviewing physician Dr. Green's May 2010 opinion.  Doc. 15, p. 6; Doc. 16, pp. 1-2.

### *Dr. Patel*

Dr. Patel is a treating physician making the ALJ's review of his opinion subject to the treating physician rule.  Under the treating physician rule, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *Gayheart*, 710 F.3d at 376; 20 C.F.R. § 404.1527(c)(2). If controlling weight is not provided, an ALJ must apply certain factors to determine what weight should be given to the treating source's opinion and the Commissioner's regulations also impose a clear duty on an ALJ always to give good reasons in the notice of determination or decision for the weight given to treating source

opinions.[13]  *Cole v. Comm'r of Soc. Sec.*, 661 F.3d 931, 937 (6th Cir. 2011) (citing 20 C.F.R. § 404.1527(d)(2)); *Bowen v. Comm'r of Soc Sec.*, 478 F.3d 742, 747 (6th Cir. 2007).

With respect to Dr. Patel's opinion, the ALJ stated,

As for the opinion evidence regarding the claimant's physical impairments, in September 2009, her physician, Ruperl Pate, M.D., opined that the claimant could sit for three hours, stand for one hour, and walk for one hour, during a normal workday (B1F/35).  He stated that the claimant could not lift any weight and she had reduced ability to manipulate objects (B1F/35).  I give little weight to Dr. Patel's assessment.  *While he treated the claimant, the record does not support such extreme limitations. Indeed, a contemporaneous functional capacity assessment showed that the claimant was generally capable of lifting weight consistent with the light exertional level, contrary to Dr. Patel's opinion.*

Tr. 20.  (emphasis supplied).

Lee contends that the ALJ violated the treating physician rule because he failed to provide *any* explanation for the weight provided to the September 17, 2009, opinion of Dr. Patel. Doc. 15, p. 6; Doc. 17, p. 2 (emphasis supplied); Tr. 263.   In making her argument, Lee fails to acknowledge the above italicized portion of the ALJ's discussion of Dr. Patel wherein the ALJ explained his reasons for giving little weight to Dr. Patel's opinion.  Doc. 15, p. 6; Doc. 17, p. 2 (quoting only a portion of the ALJ's discussion of Dr. Patel).  In addition to her failure to acknowledge that the ALJ did in fact provide reasons for the weight provided to Dr. Patel's opinion, Lee does not argue that the reasons provide were not "good reasons." "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."  *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (internal citations omitted).

---

[13] The factors to be considered are: (1) the length of the treatment relationship and the frequency of the examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, (5) the specialization of the source, and (6) any other factors which tend to support or contradict the opinion.  *Bowen*, 478 F.3d at 747; 20 C.F.R. §§ 404.1527(d), 416.927(d).

Even if Lee did not waive a "good reasons" argument, a review of the record demonstrates that the ALJ's reasons for providing little weight to Dr. Patel's extreme limitations are supported by substantial evidence.  For example, the state agency reviewing physicians found that Lee was capable of light exertional work.  Tr. 20-21, 326-333, 437-444.  The ALJ gave great weight to those opinions noting, however, that he reduced Lee's RFC to sedentary to accommodate her various foot complaints and intermittent complaints of weakness.  Tr. 20-21. Additionally, Lee's own podiatrist was of the opinion that, although Lee would suffer pain in her left foot with lengthy periods of time of weight bearing on her left foot, Lee should be able to work in a sitting position or with restricted weight bearing/restricted ambulation.  Tr. 418.  The ALJ gave weight to this opinion and restricted Lee to a sedentary RFC, noting that evidence regarding Lee's foot problem supported a finding that Lee would usually have to be seated during the workday.  Tr. 21.  Further, as noted by the ALJ, Dr. Patel's opinion that Lee had extreme functional limitations was unsupported by the record.  Tr. 20.  For example, while Dr. Patel indicated that Lee was unable to lift any weight (Tr. 263) a functional capacity assessment showed that Lee "was generally capable of lifting weight consistent with the light exertional level." (Tr. 20, Tr. 250 (September 15, 2009, functional capacity assessment)).[14]

The foregoing demonstrates that, contrary to Lee's claim, the ALJ did provide reasons for the weight provided to Dr. Patel's September 2009 opinion (Tr. 20) and Lee has failed to demonstrate or even argue that those reasons are not "good reasons." Moreover, a review of the record shows that the ALJ's reasons for providing little weight to Dr. Patel's opinion and restricting Lee to a sedentary RFC are supported by substantial evidence.  Accordingly, the Court

---

[14] The September 15, 2009, functional capacity assessment also reflected that Lee had difficulty walking at 2 mph on the treadmill and was unable to complete the cardiovascular portion of the test.  Tr. 248-250.

finds no error with respect to the ALJ's consideration of and/or the weight provided to the opinion of Lee's treating physician Dr. Patel.

> ### *Dr. Green*

Dr. Green is not a treating physician and therefore her opinion is not subject to the treating physician rule.  However, the ALJ considered and discussed the weight provided to her opinion.  As noted above, when discussing Lee's Listing argument, with respect to Dr. Green's opinion, the ALJ stated,

> [I]n May 2010, Leslie Green, M.D., a consultant with the State Agency, asserted that the claimant's impairments equaled listing 1.02A due to her problems ambulating and her obesity (B4F/1).  I give little weight to such assessment.  The Quality Assurance Unit later determined that the medical evidence did not support such conclusion (B8E).  Shortly after her initial problems, the claimant's strength and gait returned to normal with relatively conservative treatment.  Moreover, there was little objective evidence to substantiate the weakness and numbness that the claimant asserted.  Additionally, there were few signs of substantial problems with any of the claimant's weight-bearing joints.  Plantar fasciitis and obesity appeared to be the main drivers of her problems walking.  Even in considering such conditions, the claimant was still observed to walk without assistance at numerous points in the record, indicating that she was able to ambulate effectively.

> Tr. 20.

Lee contends that the ALJ erred with respect to his consideration of Dr. Green's May 2010 opinion because he failed to provide *any* explanation for the weight provided to her assessment. Doc. 15, p. 6; Doc. 17, p. 2; Tr. 318.  However, as she did when making her argument regarding the ALJ's consideration of Dr. Patel's opinion, Lee fails to acknowledge the above italicized portion of the ALJ's discussion of Dr. Green wherein the ALJ explained his reasons for giving little weight to Dr. Green's opinion.  Doc. 15, p. 6; Doc. 17, p. 2 (quoting only a portion of the ALJ's discussion of Dr. Green).

While Lee disagrees with the ALJ's decision to provide Dr. Green's opinion little weight, the predicate for Lee's argument, i.e., that the ALJ provided no reason for the weight provided, is unsupported by the record.  As is clear, the ALJ discussed, considered and weighed the opinion of Dr. Green.  Tr. 20.  Furthermore, Lee has failed to demonstrate that the ALJ's decision, including the weight provided to Dr. Green's opinion, is unsupported by substantial evidence. Accordingly, the Court finds no error with respect to the ALJ's consideration of and/or the weight provided to the opinion of state agency reviewing physician Dr. Green.

**C.    The ALJ properly considered all relevant evidence when assessing Lee's RFC and the RFC and Step Five finding are supported by substantial evidence**

During the hearing, the ALJ and Lee's counsel posed various questions to the VE, including a hypothetical question that included the limitations reflected in the RFC as assessed by the ALJ.  Tr. 55-60.  Lee contends that the ALJ erred because he "failed to acknowledge, consider and/or discuss, his own questions and counsel's questions to the VE, who ended up testifying there were no jobs this Plaintiff-Claimant could do."  Doc. 15, p. 9.  Lee's argument is in essence a claim that, because the ALJ asked alternate hypotheticals, the ALJ was bound to adopt the alternate hypothetical or explain why an alternate hypothetical was not adopted. However, she provides no authority for such a proposition.

The Court finds Lee's argument unpersuasive.  The regulations make clear that a claimant's RFC is an issue reserved to the Commissioner and the ALJ assesses a claimant's RFC "based on all of the relevant evidence in your case record."  20 C.F.R. § 404.1545(a); *see also Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ – not a physician – ultimately determines a Plaintiff's RFC"). "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence . . . the question must accurately portray a claimant's physical and mental

impairments . . . [but] need only incorporate those limitations which the ALJ has accepted as credible." *Parks v. Social Sec. Admin.*, 413 Fed. Appx. 856, 865 (6th Cir. 2011) (quoting *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010) and citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)) (internal quotations omitted).

Lee has failed to demonstrate that the ALJ failed to assess her RFC based on all relevant evidence or that the RFC was not supported by substantial evidence.[15] Further, the VE testimony upon which the ALJ relied was provided in response to a hypothetical question that accurately portrayed the limitations contained in the RFC.  In response to certain hypothetical questions, the VE testified that jobs would be eliminated and/or would not be available to the described individual. Tr. 57-60.[16]  However, in response to the first hypothetical question, which mirrored the RFC as ultimately assessed by the ALJ, the VE testified that there would be two jobs available, a pari-mutuel ticket checker and surveillance monitor (Tr. 15-16, 55-57) and the ALJ relied upon the VE's testimony in response to that first hypothetical question when he concluded that Lee could perform jobs that were available in significant numbers in the national economy. Tr. 22-23.

Accordingly, the VE's testimony in response to that hypothetical was proper and constitutes substantial evidence to support the ALJ's Step Five determination.

---

[15] To the extent that the Lee rests her claim that she cannot perform even sedentary work on the opinions of Dr. Patel and Dr. Green, as discussed above, the ALJ properly considered and explained the weight provided to those opinions.

[16] For example, the VE testified that, if an individual missed three or more days each month or was off task 25% of the time, there would be no jobs available to that individual.  Tr. 58.

## VII. Conclusion

For the reasons set forth herein, the Court **AFFIRMS** the Commissioner's decision.

Dated:  August 29, 2014

_____
Kathleen B. Burke
United States Magistrate Judge